Council, my name is Beth Prouty. I'm here on behalf of Appellant ACUITY. And on December 5, 2013, when the underlying accident in this case happened, ACUITY's policy covered a 1987 International vehicle that Johnson owned. It did not cover a 1986 International. Doesn't that depend on whether Mr. Johnson asked for the change or not? The change was reflected in the change endorsement. And all along, Western National and Johnson's argument... Just because it's reflected on their documents doesn't mean there was a meeting of the minds on that, does it? Not necessarily. That's their argument, that there was no meeting of the minds. And so if that's their argument, they have the burden to show that. But didn't the trial resolve that question as fact? The trial did not put the burden on Western National and Johnson to prove that fact of a unilateral change. But the finding of the jury was, apparently, that Johnson didn't change his insurance. Yes, it was, based on the finding... Yes, based on the instruction that ACUITY had the burden to show that Johnson did not ask the change. Versus, if this is an argument that there's coverage because this change was never requested, they're attacking the policy, saying the endorsement is not included in the policy. And that's their argument for coverage. So they have the burden to show that they never requested that change. And instead, the district court said, we're assuming they never asked. We're assuming, as a matter of law, there's no coverage here. The insured met their burden. Doesn't, generally speaking, the party seeking to prove a modification have the burden of showing a modification? Well, we don't agree that there was a unilateral modification. Well, I understand that, but the question is, who has the burden of showing that? You're saying that it's not your burden, but I'm asking, as a general principle, doesn't the party seeking to show that a contract was modified have the burden of proving that it was modified? Yes, and it was Johnson and Western National who were saying the contract was unilaterally modified. If they had met that burden, then the burden would have shifted to us to show that Johnson consented to the modification. But they're trying to invalidate the contract. But you're presuming that it was, in fact, modified in your question. I think the initial question is whether there was a meeting of the minds to actually modify it. The point being, just because they have a piece of paper in their file that says, he called and said, change it to the 1987 vehicle, doesn't mean there was a meeting of the minds. And we also sent a change endorsement. We followed the instructions in our policy as to how a change was to be made. And all of the cases at Western National and Johnson's site, they're all cases where the insured agreed. We made a unilateral change after the fact. We sent the endorsement, the additional documents to the insured. We gave it to them. We agree there's a unilateral modification here. The only issue is whether the insured consented. Those are the cases that Western National is relying on. Here, acuity doesn't, it's not saying, yes, we made this unilateral change after the fact and nailed the endorsement. The issue isn't just whether Johnson consented. It's whether or not there's a unilateral change even to begin with. And that's what Western National, just simply by putting forth the allegation that there was a unilateral change, can't shift the burden of proof to the insurer to then prove a defense to coverage without first showing that there is coverage. And in any event, Western National has no standing to argue that the change endorsement was not part of acuity's policy. Acuity's policy, as certified in this case, contained the change endorsement. Western National's not a party to that contract. They're not in privity. They have no standing. Johnson could have taken that vehicle off the acuity policy, and Western National would have no basis to object. If Western National wants to come in and start arguing about what's part of a contract that they were not a party to, they should have settled with Johnson and subjugated to his rights to attack acuity's policy. But Western National is not a party to this policy. For example, Western National, after this accident happened, took the trailer involved in the accident off of their policy using a change endorsement. What if they had done that before the accident? Could acuity then come in and argue, the trailer is covered on your policy because you're insured and never asked to have that trailer taken off the policy? No, acuity can't do that because acuity is not a party to that contract. And Western National, as an excess- Did acuity assert any claims against Western? We asserted that Western National was, as the insurer on the trailer, covered Johnson because acuity's primary policy did not cover- Don't they have a right to defend your claim? They have a right to defend our claim based on the terms of the policy. But doesn't that give them standing? It doesn't give them standing to argue that a term is not part of the policy. Say they can argue if the case was about a pollution exclusion, they can argue whether or not this scenario falls within the exclusion. But they can't argue that exclusion in this policy is invalid because of the insured's reasonable expectations. That's not their type of claim to argue. They can argue the terms of the policy, but they can't argue to change the policy. If they want to have that right, that's a right they get through subrogation by settling with Johnson. And they had just as much of a right to do that as acuity did. But again, your assumption is that the policy had been changed. And that's what they're challenging, is whether it had in fact been changed. Again, I come back to just because there's a piece of paper in your client's file that says it's been changed doesn't mean it actually has been changed. But that's not their right to argue what is part of our policy or not. If it's- In determining who's got excess in primary coverage, you don't think they can argue that? No, they can't try to invalidate a term in our policy. Yeah, and you're assuming that that's been adopted, that both sides have agreed to that. And that was the substance of the fight that was determined against you. Well, and they initially argued reformation. But when they saw that they had no claim for reformation, then it was after trial that they came up with this claim that it was a unilateral modification and a breach of contract. But they're an excess insurer. They're not a party to our policy. They have no direct claims against acuity as a primary insurer. Yes, their coverage obligation depends on the interpretation of our policy, but that doesn't give them a right to try and attack terms in our policy. They have no direct right to challenge our policy. And moving on, even if they did have that right, it was prejudicial error not to put the burden of proof on Western National to prove that there was a unilateral change. And then the burden would shift to acuity to show that there was consent by Johnson. It's the difference between telling the jury, we're starting out with an assumption that there is coverage here, unless the insurer can prove there's no coverage. It's all up to acuity to prove there's no coverage. Otherwise, there's coverage. What the jury should have been instructed is that there's only coverage here if Western National can prove there was a unilateral change. If Western National proves that, then the burden shifts to acuity to show there was consent. That's the defense to coverage, and that's acuity's burden. And that is a prejudicial error because when you're looking at a case between two insureds, the jury's not going to come down necessarily in favor of one insurer or the other. But when you start out telling the jury there's coverage here, it's up to the insurer to prove there's not. That puts all of the burden on one insurer to show it presents to the jury that it's an insurer who's trying to get out of their coverage obligation versus an issue of who has a coverage obligation in this case. And then moving on to the final issue of Johnson's participation in this case after he settled with acuity. Acuity absolved Johnson of all liability in this case. It agreed that it would defend Johnson in the cross-claim and it would indemnify him for the cross-claim. Johnson had no financial exposure in this case, and yet the court allowed Johnson to participate as a party. The court said that Johnson had a right to defend against Western Nationals' cross-claim. But acuity had the right to defend Johnson against that cross-claim. That was part of the settlement agreement. He's still a party, though, to the cross-claim, isn't he? Yes, he was, but he should not have been allowed to have Western National Defense Council representing him when he had required acuity to defend him against that cross-claim. And also, he didn't defend the cross-claim. He argued in favor of the cross-claim at trial. Even if this was error, why would it be reversible at this point after a completed jury trial? Because it was a prejudicial error to have. In what way was it prejudicial? Because Johnson argued for coverage under acuity's policy when he did not have a claim for coverage under acuity's policy. He is very open in his brief to the court. He wanted acuity to lose. His counsel argued in opening and closing that there was coverage under acuity's policy and the jury should find that, and Johnson had no claim for coverage under acuity's policy. And Johnson, by his own admission, was a central figure in this case and the jury found his testimony to be very key. And to have Johnson arguing for coverage when he had no claim for coverage is prejudicial. And also, Johnson argues that he was just representing the facts as he saw them all along. But when you look at Johnson's initial answer to Western National's cross-claim against him, he said he could not admit or deny, and he held Western National to its duty to prove its case, and he asked that the cross-claim be dismissed. But at trial, he argued in favor of the cross-claim, and he argued for coverage, and he coordinated his legal strategy with Western National's counsel. And Johnson argues, well, acuity could have avoided any prejudice by disclosing to the jury that his counsel was being paid by Western National, but the district court would not allow us to disclose that to the jury. And also, the issue confused the jury because you had Johnson, on the one hand, arguing against a cross-claim by arguing there's coverage under acuity's policy, and you had Johnson arguing, or you had acuity arguing Johnson's cross-claim against Western National. So acuity had the cross-claim against Western National arguing on Johnson's behalf that there was coverage. So Johnson was making two arguments at trial, one for coverage and one against coverage, and that was prejudicial and confused the jury. I'll reserve my remaining time for rebuttal. Thank you. Ms. Ross. Good morning. May it please the court, counsel, my name is Paula Vraa, and I represent Western National in this case. Just to follow up on that last question, Brian Johnson, after a two-day trial, he told the truth. He told what had happened with this particular policy, that he had not requested the change. He didn't have a dog in the fight anymore, but we had taken his deposition, and he testified consistent with his deposition. There was no ganging up, there was no prejudice. Western National, I represented Western National at the trial before Judge Davis. I took the lead on all the questioning, and there was no prejudice having Brian Johnson participate. What was the discussion before the district court about whether Johnson would continue after he was settled out? The settlement, of course, is coming right before the trial, and so acuity asked that Johnson not participate. I pointed out that Johnson is still a party because of the cross-claim and has the right to participate. So that's all of the discussion, and it is in the record. So I'd like to back up now on this because there are, okay. Isn't he just a nominal party at that point? He's a nominal party, but he has the right to participate and present his case. He was also a key witness. I'm trying to think if we had actually subpoenaed him or not, but he was a key witness on the acuity coverage piece. But being a witness is a different status than being a party allowed to cross-examine witnesses. Yeah, and he did very little cross-examination. The whole case was basically presented through witnesses we called. Did he call for any witnesses? I don't think he did. I think we called all the witnesses. What would have been the effect on this trial had he not been allowed to continue? I don't think it would have made any difference in this case at all because we already had him under oath at the deposition saying that he never requested the change to the policy. Does that answer your question? I'd like to just back up. There really are two issues here going on. There's the issue between Brian Johnson and acuity, and then there's the issue of whether an access carrier like Western National has the ability to get in these two parties' business because they are an access carrier and their liability is dependent on what happens over here. So starting with this first relationship between the policyholder and acuity, I think it's pretty clear, and from the questions this panel has asked, this isn't a reformation claim. This isn't two parties signing a contract and they accidentally put the leases for $300 when it really is for $200. This is a unilateral change made without the consent of the policyholder. It's like in a lease, if the landlord put an endorsement on the lease and said, now the rent is $500, and by the way, now here's the document that says $500. Now you, tenant, have the burden of showing that's wrong. It's a different situation, and when there's a unilateral change that's not consented to by another party, it is the party that unilaterally made that change that has the burden of showing that that unilateral change was requested by the policyholder or consented by the policyholder. So this whole issue of reformation is really a red herring. This is a unilateral change not authorized by the policyholder. And then turning to the second issue, and that is, what role does Western National have in this as the excess carrier? Can they look at that? Can they challenge it? And the answer is absolutely yes. And ACUITY recognized that by joining Western National in their DEC action and saying there's a justiciable controversy here and it's between us and defendants. It's between us and Brian Johnson and Western National. And even when you look at their DEC action complaint, they actually commented on whether Western National provided coverage. So we have basically ACUITY admitting that Western National has a role, they have an interest, and they can come to the table and examine the ACUITY policy, which is exactly what we did whether Western National is or whether Brian Johnson was a party or not. I cited a couple of cases from Minnesota law that talk about this is common. In DEC actions, there's primary excess carriers. They're all commenting on coverage under other people's policies because they have an interest. If we're going to be excess and now we're being asked to be primary, we have an interest. Now there's another piece of what happened in this case that I think is really important, and that is the fact that ACUITY, during the litigation, actually settled the underlying case. So they paid $561,000. So now we're not talking about controversy as, you know, can you tell the parties about what our rights are? Now we're talking about a concrete give us our money back. We paid $561,000. Now in that, that's an even stronger case for Western National to say, we're not going to pay you that unless we know, number one, were you authorized to? What do you have coverage under your policy? Was there a unilateral change to that policy? And it becomes an indemnity or contribution action. And I cited a couple of cases under Minnesota law about that. The third thing that happened here that is really should, you know, I mean, to me, this is where you get into collusion. This is where ACUITY goes to Brian Johnson weeks before the trial and says, we have a million-dollar policy that's clearly primary if you didn't request this endorsement, a million dollars. We're going to pay you $4,500 to buy your rights out, and then we're going to claim that Western National no longer has standing. We've cited a couple of cases from Minnesota District Court that talk about a collusive settlement that damages either an injured party or an excess carrier will not be enforced. And the case I cited, Carlson Management, was a situation where the policyholder and the primary carrier got together, and they said, let's stipulate as to what our policy means so we can show that it's exhausted, and then we'll turn around and have the excess carrier come on, and then they can shoulder the burden. And the court said, no way, that's not, you can't do that. You cannot prejudice and kill the excess carrier's rights through a collusive settlement for $4,500. And another example, and your honors may be familiar with this, is a situation where there was a low-limits policy, it's the Matthews case, low-limits policy where the policyholder and the insurer did a policy buyback so an injured party couldn't recover. And that's the Matthews case. Both of those are cited in my brief. So you have a policyholder saying, yeah, buy my rights out, and then the injured party is left hanging because the policy was voided through a side agreement. And that's what happened here is that there was, they saw it right before trial when the whole time, all through discovery, the big issue was did Brian Johnson request that endorsement. At the very eve of trial, they tried to buy out Brian Johnson's rights to prejudice Western National. That is not okay to do, and that's what Judge Davis saw, and he knew that this trial had to go forward. One other thing I want to talk about, and that is standing. Now, standing gets thrown around a lot in this case. Western National did not have standing. ACUITY started this deck action. ACUITY said, we all have rights here, and we all have interests here, and we're going to resolve this. And, by the way, we think Western National, you have coverage. We think we don't, and we think there is a primary excess issue. Okay, so ACUITY is acknowledging they have standing. They have an interest, an actual potential injury, actually, because until they paid the 561, they hadn't paid anything. They were defending Brian Johnson in the case. Then Western National brings a counterclaim, and our counterclaim was not limited to reformation. If you look at our counterclaim, and I believe it's in the appendix under A111. In our counterclaim, we said, by the way, ACUITY, you have coverage under that policy, and it's primary. And then we said, and also, alternatively, reformation. Because at that point, we don't know how the discovery is going to come out. We don't know who's going to say what. We don't know if the agent or ACUITY is going to say, gal, we all made a mistake here. We accidentally unilaterally modified the policy. So we pled it in the alternative. They were on notice, and we did never acknowledge that this was a reformation claim. Then we go through discovery, and then we get it coming up in a motion in limine is the way it was brought up, where they said, oh, we settled with Brian Johnson, bought his policy rights for $4,500, and now you can't challenge anything. Even though a jury found they did have coverage. So as far as procedurally how this happened, Western National did everything that they needed to do to preserve their arguments. They have a right and interest here, and we respectfully request that the judgment be affirmed. Mr. Senneson. May it please the court and counsel, the issue that I want to address is did Judge Davis abuse his discretion when he decided that Brian Johnson, being a party to the lawsuit, could have a lawyer at the trial and could have the lawyer participate and represent him on his behalf? ACUITY complains that that decision by Judge Davis led to confusion. But the best that ACUITY can point to is that Mr. Johnson argued for coverage and then didn't argue for coverage. I didn't quite understand that, but there's nothing in the record that ACUITY points to that proves ACUITY's argument that the jury was confused and the court was confused. And I might also add that one of the reasons it was good for Mr. Johnson to have a lawyer there is because at some point ACUITY is pointing at Mr. Johnson, and other times throughout the course of this litigation, Western National is pointing at Mr. Johnson with cross-claims. So when it was asked, well, why are you going to still show up and represent Mr. Johnson? We don't know how things, Mr. Johnson didn't know how things were going to shake out at the trial. Whether or not ACUITY would win in its coverage case vis-à-vis Mr. Johnson, and then would Western National be able to be obligated to indemnify Mr. Johnson and then have a cross-claim for indemnity to reimburse it, much like the ACUITY with this MCS-10 endorsement that ACUITY had an indemnity claim against Mr. Johnson. So did Mr. Johnson have an interest in being at trial? He did indeed have an interest in being at trial, participating and representing his interests. And ACUITY also argues, well, it was misleading for Mr. Johnson to have a lawyer there. Well, again, where is the evidence that the jury was misled by Mr. Johnson's participation at trial? There is no evidence to that effect. In fact, what we see is Mr. Johnson was consistent. He was consistent in everything he told all of the parties before the litigation, during the litigation, and at trial. On the day of the accident, the record reflects he talked to ACUITY's agent, Tim Rothey at Holden Insurance Agency, told him what happened, was shocked when he didn't have coverage, told Mr. Schwartz, Mr. ACUITY's claims representative, thought he had coverage. At his deposition, told his story. At trial, told his story. You participated in cross-examination, correct? Yes. Did you put on any witnesses? I did not. I assume you participated in closing argument? I did. The court's order, there was no collusion. There was no collusion between ACUITY and Mr. Johnson. Did ACUITY pay your fees or did Mr. Johnson? Western National paid my fees. Western National paid your fees. That's correct. There was no collusion. The court decided that the court, in response to ACUITY's motion in limine before trial, said the court is well-equipped to ensure the case is tried efficiently, and without the duplicated lines of questions that ACUITY argues would be prejudicial to it. And indeed, the court is well-equipped and was well-equipped. Thank you. Just several key points. This was not a settlement on the eve of trial. This was a court-ordered settlement with Magistrate Judge Brisbois, with Western National's counsel present. That happened over a month before trial. It was signed the day of trial because Mr. Sondersen represented, and you cannot get in touch with Johnson to sign it before. But this was negotiated well in advance and provided the basis for a timely motion to dismiss. And just because there was a justiciable controversy between Western National and ACUITY, which was whether ACUITY's NCS 90 or Western National's excess policy provided primary coverage when ACUITY's policy didn't apply, but that doesn't give Western National standing to try and change the terms of ACUITY's policy. And the change endorsement was not just a form, a piece of paper, and an agent's binder about what the policy said. It was part of the policy. The policy was changed and said the 1987 was covered. If Johnson had been in an accident driving the 1987, you bet he would be arguing that the 1987 was covered. He put this paper in the file the day after the accident saying it was canceled as of a month ago. That would be the policy. Well, this was not a piece of paper in an agent's notes. They put an endorsement in there, whatever it takes to actually change it. They put one in the day after saying, as of a month ago, the policy was canceled. You're saying that's the policy now? That goes into issues of whether you can retroactively change the policy. So I wouldn't agree to that. Thank you. Okay. Thank you all for your arguments. We'll go on to the last argued case then this morning.